UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN PIERCE,

Plaintiff,

v. Case No. 3:26-cv-532-TKW-HTC

JOSHUA HATTAWAY, et al.,

Defendants.
_______________________________/

# REPORT AND RECOMMENDATION

Plaintiff Kevin Pierce, a prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 alleging the Defendants violated his constitutional rights by retaliating against him and using excessive force. Doc. 1. Defendants have moved to dismiss the complaint, arguing Pierce failed to exhaust his administrative remedies (Docs. 31 – 33), and Pierce responded in opposition (Doc. 35). After considering the parties' submissions and the relevant law, the undersigned concludes Defendants' motion should be GRANTED.

## I. Background

Pierce is a prisoner in the Florida Department of Corrections ("FDOC"). He sues three employees of Okaloosa Correctional Institution: (1) Sergeant Joshua Hattaway; (2) Officer Z. Fleaming; and (3) Lieutenant Cody Small. His complaint contains the following factual allegations.

On September 17, 2025, Lieutenant Small asked Pierce why his grandmother kept calling about officers threatening him. Small added that he was "sick of hearing about it" and would "protect his officers at all cost[s]." Fleaming then sprayed Pierce with chemical agents, and all three Defendants proceeded to punch and kick Pierce while he was out of restraints.

After placing Pierce in restraints, the Defendants resumed beating him. Small also sprayed Pierce in the face with chemical agents. While Pierce was chest down on the ground, Small and Fleaming put their knees on his neck and back and Fleaming told him he was going to learn "the hard way." Small and Hattaway then penetrated Pierce's buttocks with their fingers.

Based on the foregoing, Pierce alleges the Defendants violated: (1) the Eighth Amendment by using excessive force and failing to protect him; and (2) the First Amendment by retaliating against him. As relief, he seeks punitive damages.

## II. Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The

exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth*, 532 U.S. at 741 n.6; *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (The PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'") (citation omitted). Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted). "Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes 'specific findings in order to resolve the disputed factual issues related to exhaustion.' The

burden is on the defendant to show a failure to exhaust." *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019) (quoting *Turner*, 541 F.3d at 1082).

The grievance procedures promulgated by the FDOC generally require an inmate to complete three steps. First, the inmate must file an informal grievance with a designated prison staff member. Second, the inmate must file a formal grievance with the warden's office. Third, the inmate must submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). However, in some circumstances, inmates may file grievances with the warden or Secretary without first utilizing the lower levels of the grievance process.

## III. Discussion

Defendants argue Pierce failed to exhaust his administrative remedies because none of the grievances he filed that potentially relate to his claims complied with the FDOC's rules.[1] In support of their motion, Defendants submitted: (1) a declaration from Glen Allen Williams, an FDOC employee responsible for maintaining the informal and formal grievances at Okaloosa CI; (2) a declaration from Ashley Stokes, the Custodian of Records for the Bureau of Policy Management and Inmate Appeals; (3) logs listing the informal grievances, formal grievances, direct

[1] Defendants also argue Pierce's complaint is a shotgun pleading and he has failed to state a First Amendment claim. Because Pierce has not exhausted his administrative remedies, those arguments need not be addressed.

grievances, and grievance appeals Pierce filed between September 17, 2025, and January 29, 2026; and (4) copies of some of those grievances and appeals. Docs. 32 & 33.

Pierce's response argues he bypassed the informal and formal grievance steps and filed a direct grievance with the Secretary because he feared retaliation from staff, but prison officials "refused to process the grievance according to the governing rules and later reject[ed] the grievance for a reason not supported by the rule[s]." Doc. 35. Because his grievance was not processed, Pierce claims administrative remedies were "unavailable" and he satisfied the PLRA's exhaustion requirement. Pierce did not submit any evidence to support his response.

Considering Pierce alleges administrative remedies were unavailable to him because the FDOC failed to properly process his direct grievance, this case is not subject to dismissal under step one of the *Turner* analysis. Nevertheless, after reviewing the parties' arguments and the evidence, the undersigned concludes, under step two of the *Turner* analysis, that administrative remedies were available to Pierce but he did not file a grievance that exhausted his claims against the Defendants before filing suit. The grievances Pierce filed: (1) failed to include the details necessary to exhaust his claims; or (2) were properly returned as procedurally deficient. Thus, this case should be dismissed for failure to exhaust.

### A. Pierce's direct grievances to the Secretary did not exhaust his claims.

Pierce argues he attempted to file a direct grievance to the Secretary, but it was improperly returned without action. He claims this demonstrates that administrative remedies were unavailable. However, the undersigned disagrees.

Pierce does not specify which direct grievance he is referring to, but Defendants provided two to the Court.[2] Doc. 33 at 9-17. Pierce filed the first direct grievance on December 1, 2025,[3] stating: (1) he feared retaliation from staff if he filed it at the institutional level; and (2) it was "a PREA claim that can be filed at any time." Doc. 33 at 10 (Direct Grievance No. 25-6-39801). The grievance described the September 17, 2025 incident with the Defendants, including the alleged sexual assault, and requested that the incident "be reported." On December 11, 2025, the grievance was returned by the Secretary's office without action. Doc. 33 at 9. Officials found Pierce had not provided a valid reason for bypassing the institutional

[2] Defendants also submitted an appeal Pierce filed with the Secretary in October 2025. Doc. 33 at 6-8 (Appeal No. 25-6-35331). While the appeal mentions "the officers used excessive force," it is focused on complaining about disciplinary proceedings; indeed, the appeal requested the dismissal of two disciplinary reports ("DRs") and the restoration of gain time. Thus, it did not relate to the claims raised here. *See Simpson v. Holder*, 200 F. App'x 836, 838, 840 (11th Cir. 2006) (finding inmate failed to exhaust his administrative remedies when his grievances "tangentially" referred to his claims, but the grievances did not request a remedy with respect to the claims and the officials' responses show they did not consider those complaints). Furthermore, even if the appeal did relate to Pierce's claims, it did not exhaust them because it was properly returned without action for his failure to attach the formal grievance response. *See* Fla. Admin. Code r. 33-103.014(1)(g).

[3] Pierce dated the grievance "1-1-25," but it must have been filed on December 1 because it was received by officials at Okaloosa CI on December 3. Doc. 33 at 10.

level grievances, and the direct grievance was "not accepted as a grievance of reprisal."

This direct grievance was properly returned without action. FDOC rules indicate a "grievance of reprisal" may be filed directly with the Secretary, but a "grievance of reprisal" is defined as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code r. 33-103-002(9); 33-103-007(3)(a). Pierce's direct grievance did not allege the Defendants had taken retaliatory action against him for filing grievances; instead, it alleged they retaliated against him because of his grandmother's phone calls. Thus, it did not qualify as a "grievance of reprisal."

Moreover, Pierce's allegation that he filed directly with the Secretary because he feared retaliation if he filed at the institutional level is belied by the evidence. The logs and grievances Defendants submitted show Pierce filed multiple informal and formal grievances at Okaloosa CI before filing the December 1 direct grievance, including some that specifically referenced the Defendants and the September 17, 2025 incident. *See* Doc. 32 at 7-8, 10-11, 13-15, 17-18. Thus, prison officials reasonably concluded Pierce did not provide a valid basis for bypassing the

institutional grievance steps and filing directly with the Secretary.[4] *See* Fla. Admin. Code r. 33-103.014(1)(f) (stating a grievance may be returned when the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"). And because the officials properly returned the direct grievance without action, it did not exhaust Pierce's claims or show the grievance process was "unavailable" to him. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("The district court also appropriately considered [the inmate's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances.").[5]

Pierce filed a second direct grievance on December 13, 2025. Doc. 33 at 12-17 (Direct Grievance No. 25-6-41646). In addition to discussing the September 17, 2025 incident with the Defendants, it also complained about: (1) threats Sergeant Blackburn made on August 29, 2025; (2) a search Sergeant Derovin conducted on September 11, 2025, that involved threats and the destruction of Pierce's property;

---

[4] Pierce argues he "is allowed to file a sexual abuse claim at any time," but that is not relevant because the direct grievance was not returned as untimely. Furthermore, inmates can only file direct grievances to the Secretary regarding sexual abuse when they allege the abuse was committed by the warden of the institution where they are located. Fla. Admin. Code r. 33-103-007(3)(a). Because Pierce does not allege the Warden of Okaloosa CI sexually abused him, he could not file a direct grievance under that rule.

[5] The grievance logs thoroughly undermine Pierce's unavailability argument, as they show officials addressed many of his grievances on the merits. *See* Doc. 32 at 7-8, 10-11; Doc. 33 at 20-21.

(3) calls his grandmother made to the FDOC that did not result in corrective action; (4) how, in an attempt to cover up the September 17 incident, a weapon was planted on him, he was given a DR for attempted battery on an officer, and he was sent to close management; and (5) how Okaloosa CI was blocking his mail and his attempts to exhaust his administrative remedies. The grievance also included statements from three inmates who purportedly witnessed Sergeant Derovin destroying Pierce's property. Doc. 33 at 15-17.

Like the first direct grievance, this one was properly returned without action for failing to comply with FDOC rules. The response, dated December 30, 2025, correctly noted the grievance improperly addressed "more than one issue and/or complaint." Doc. 33 at 11. It discussed, in addition to the September 17 use of force, threats on multiple dates, the destruction of Pierce's property, an alleged cover-up, and restrictions on Pierce's ability to send mail and submit grievances.[6] However, under the FDOC's rules, an inmate may address "only one issue or complaint" in a grievance. Thus, it was appropriately returned without action. *See* Fla. Admin. Code r. 33-103-014(1)(a) (stating a grievance may be returned if it "addresses more than one issue or complaint").

---

[6] The direct grievance claimed the reason Pierce was "writing this so late[]" was because "they would not give [him] inmate request or 303 grievance to write it up[.]" Doc. 33 at 14. However, as previously indicated, the grievance logs show Pierce was able to file numerous informal and formal grievances prior to this December 13 direct grievance.

Because Pierce's direct grievances did not comply with the FDOC's procedural rules, they did not exhaust his First or Eighth Amendment claims. *See Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (noting grievances returned without action for non-compliance with procedural rules are not sufficient to exhaust).

**B. Pierce's October 9 informal grievances did not exhaust his claims.**

The undersigned also reviewed the two informal grievances Pierce filed on October 9, 2025, and concludes they did not exhaust his claims. The first, No. 115-2510-0140, was received by Okaloosa CI officials on October 10. It stated:

> I am filing this grievance for unlaw use of force Ch. 33.602-210(B) miscellaneous use of force (b)(2) use of force shall not be applied for punishment. Physical restraints such as handcuffs, leg irons, flex cuffs, and other such devices shall only be used for restraint purposes not for punishment.
>
> And I was punishment cause my grandmother keep calling on your officers because they threat my life two times saying that they will kill me and put a weapon on me and they both told me they got friend and family work all though this region. An if they can't do it they have friends that will do it. Me and my grandmother told them I am an fear of my life and she call up here for weeks saying that.

Doc. 32 at 12 (errors in original). The response, dated October 13, indicated the grievance was being returned and stated: "These allegations have been forwarded to the OIG for review. You will have to forward any requests to their office for answer[s] or complete a public records request once the investigation is complete." *Id.*

The second informal grievance, No. 115-2510-0147, was received by officials on October 13. It complained that: (1) Sergeant Blackburn threatened Pierce on August 29; (2) Sergeant Derovin threatened him on September 11; and (3) the Defendants attacked him in the bathroom on September 17 (without mentioning the sexual abuse allegation). Doc. 32 at 13-14. The response indicated the grievance was being returned without processing because it was filed more than 20 days from when the event occurred. *Id.* at 13.

The undersigned finds neither of these informal grievances exhausted Pierce's claims. First, Pierce's response to the motion to dismiss does not argue these informal grievances satisfied the exhaustion requirement; instead, as discussed above, he focuses on a direct grievance to the Secretary. Second, both these grievances were filed on October 9, more than 20 days after the September 17 incident. Thus, even if the first grievance was about the excessive force incident, it would have been returned as untimely.[7] *See* Fla. Admin. Code r. 33-103.014(1)(u) (stating an informal grievance may be returned when it is filed "in excess [of] 20 days from the time the event being grieved occurred"); *Johnson v. Meadows*, 418

[7] Unlike the response to No. 115-2510-0147, the response to No. 115-2510-0140 did not mention it was untimely, perhaps because Pierce did not include any dates in the grievance; instead, it advised Pierce that his allegations had been forwarded to the Office of the Inspector General ("OIG") and further information would need to be sought from the OIG or through a public records request. However, even if this response could be construed as addressing the merits and waiving the timeliness issue, it would not help Pierce because, as explained herein, the grievance was too vague. Furthermore, the evidence does not indicate, and Pierce does not argue, he completed the grievance process by filing a formal grievance or, subsequently, an appeal to the Secretary.

F.3d 1152, 1153 (11th Cir. 2005) ("[A]n untimely grievance does not satisfy the exhaustion requirement"). Moreover, the evidence shows Pierce filed two unrelated formal grievances on September 26, 2025, which shows he had access to grievance forms following the September 17 incident. *See* Doc. 32 at 10, 19-22; *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021) (affirming "district court's finding that [inmate's] close-in-time grievances demonstrate that he was aware of the grievance process and capable of submitting a completed grievance").

Third, No. 115-2510-0140 did not include enough detail to put FDOC officials on notice of the excessive force and retaliation claims raised in this case. It vaguely referenced an "unlaw use of force," quoted part of Fla. Admin. Code r. 33-602.210, and then alleged Pierce was "punish[ed]" because his grandmother had called and complained that officers were threatening him and he feared for his life. Doc. 32 at 12. However, the grievance did not identify: (1) what kind of force was used (e.g., physical force, chemical agents, or weapons); (2) when or where the use of force occurred; (3) which or how many officers used force; or (4) what events preceded or followed the use of force. Thus, the grievance did not provide prison officials with the information necessary to investigate the Defendants for beating and using chemical agents on Pierce on September 17, 2025.[8] *See Chandler v. Crosby*, 379

---

[8] With respect to Pierce's retaliation claim, the grievance included enough information about the alleged protected activity (his grandmother's complaints about the threats) but it did not sufficiently describe the adverse action (the excessive force).

F.3d 1278, 1287 (11th Cir. 2004) (noting the purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues") (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)) (alterations in original); *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 953 (11th Cir. 2016) ("The exhaustion requirement … is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident.").

Furthermore, if Pierce intended for this grievance to exhaust his excessive force claim, it is unclear why he did not include the pertinent information in the grievance, considering the other grievance he filed the same day—which was returned as untimely—did specify he was attacked in the bathroom by Small, Hattaway, and Fleaming on September 17, 2025. Doc. 32 at 13-14; *see Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000) ("implicit in [the exhaustion] requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses"). Accordingly, the informal grievances Pierce filed on October 9, 2025, did not satisfy the exhaustion requirement.

**C. None of the remaining grievances demonstrate exhaustion.**

The other informal and formal grievances Defendants submitted also do not show Pierce exhausted his administrative remedies. Those grievances did not concern the September 17, 2025 incident or were properly returned without action. *See* Doc. 32 at 15 (October 10, 2025 informal grievance complaining that his close management report included information that was not contained in his DRs); *id.* 16-18 (October 13, 2025 formal grievance complaining about officer threats and the September 17 incident that was returned as untimely); *id.* at 19-22 (two September 26, 2025 formal grievances requesting that the DRs he received on September 17 be overturned because they did not list his housing location); *id.* at 23-24 (October 7, 2025 formal grievance requesting removal from disciplinary confinement and return of gain time because DRs lacked certain information).

**IV. Conclusion**

The evidence submitted by Defendants demonstrates that administrative remedies were available to Pierce but he did not properly exhaust them regarding his excessive force and retaliation claims before filing this action. Thus, under step two of the *Turner* analysis, the undersigned finds Defendants have met their burden of showing that Pierce failed to exhaust his administrative remedies.

Accordingly, it is RECOMMENDED that:

1. Defendants' motion to dismiss (Docs. 31 – 33) be GRANTED.

2. This case be DISMISSED without prejudice because Pierce failed to exhaust his administrative remedies.

3. The clerk close the file.

At Pensacola, Florida, this 26th day of October, 2026.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.